UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:25-CV-00029-GNS

BRADLEY EASLEY                                                                                    PLAINTIFF

v.

COUNTY OF WARREN, KENTUCKY et al.                                                  DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant's Motion to Dismiss (DN 12). The motion is ripe for adjudication.

        **I.**        **STATEMENT OF FACTS AND CLAIMS**

On March 6, 2024, Plaintiff Bradley Easley ("Easley") was arrested and taken to the Warren County Regional Jail ("WCRJ"). (Compl. ¶ 12, DN 1). Shortly after arriving at the jail, Easley was transported to the local hospital, medically "cleared," and then returned to the jail. (Compl. ¶¶ 13-14). Upon his return to the WCRJ, Easley was allegedly uncooperative with the jail staff and was placed in a restraint chair. (Compl. ¶ 15). Once Easley calmed down, he was moved to the jail's "drunk tank" where he was held with other inmates. (Compl. ¶ 16). At some point in the night, Deputy Jailer Kevin Weatherby ("Weatherby") and another deputy jailer referred to in the Complaint only as "Deputy Pickett" ("Pickett") came into the drunk tank. (Compl. ¶ 17). Easley approached the deputies as they entered and they, tasers drawn, ordered him to place hands against the wall, which he did. (Compl. ¶¶ 17-18). While Easley was facing the wall, Pickett accidentally stepped on Easley's flip flop sandal, causing Easley to move his leg. (Compl. ¶ 19). Following this movement, Weatherby allegedly tased Easley twice, causing him

1

to fall to the ground. (Compl. ¶ 19). Once Easley was on the ground, Pickett gained control of Easley and Weatherby tased him again. (Compl. ¶ 20). Following this third tase, the Complaint alleges that Weatherby "stunned" Easley with his taser and then kicked Easley in the face. (Compl. ¶¶ 21-22).

Following these events, Easley remained incarcerated and was given minimal, if any, medical care. (Compl. ¶ 23). After his release, Easley had eye surgery and allegedly is now permanently blind in his left eye. (Compl. ¶¶ 24-25).

Easley filed this action against Warren County ("Warren County"), the Warren County Fiscal Court, Warren County Jailer Stephen Harmon in his individual and official capacities, Weatherby in his individual and official capacities, and multiple unnamed defendants in their individual and official capacities as deputy jailers. (Compl. ¶¶ 5-11). He brings a federal claim under 42 U.S.C. § 1983, and Kentucky state law claims for assault and battery, intentional infliction of emotional distress, failure to acquire/provide necessary medical care, negligence, and negligent hiring, training, and retention. Defendants have moved to dismiss all of Easley's claims. (Defs.' Mot. Dismiss, DN 12).

## II.     JURISDICTION

Jurisdiction in this action is based on federal question and supplemental jurisdiction. *See* 28 U.S.C. § 1331; 28 U.S.C. § 1367(a).

## III.    STANDARD OF REVIEW

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  When considering a motion to dismiss, a court must "accept all the [plaintiff's] factual allegations as true and construe the complaint in the light most favorable to the [plaintiff]." *Hill v. Blue Cross & Blue Shield of Mich.*, 409 F.3d 710, 716 (6th Cir. 2005) (citation omitted).  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted) (internal citation omitted) (quoting *Twombly*, 550 U.S. at 557).

## IV.     DISCUSSION

### A.     Claims Against Warren County and the Warren County Fiscal Court

Easley brings claims against both Warren County and the Warren County Fiscal Court. (Compl. 1).  Before addressing the merits of these claims, it must first be decided whether such claims are duplicative.  Kentucky's courts and the Sixth Circuit have "treated fiscal courts as county governments . . . ." *Doe v. Magoffin Cnty. Fiscal Ct.*, 174 F. App'x 962, 971 (6th Cir. 2006) (citing *Bd. of Claims of Ky. v. Banks*, 31 S.W.3d 436, 439 (Ky. 2003)).  Therefore, Warren County and the Warren County Fiscal Court are the same entity, and the claims against the Warren County Fiscal Court are dismissed.

Pending against Warren County are Easley's federal claim under Section 1983 and a host of state law claims.  Each of these is addressed in turn.

#### 1.     *Section 1983*

Municipal governments, including counties, can be sued directly under Section 1983, but the basis of the suit must be an unconstitutional action pursuant to a "policy statement, ordinance,

regulation, or decision officially adopted and promulgated" by the municipality's officials. *Monell v. Dep't Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690 (1978). Accordingly, a Section 1983 claim cannot proceed under a theory of *respondeat superior*—"a municipality cannot be held liable *solely* because it employs a tortfeasor . . . ." *Id.* at 691. Instead, a plaintiff must show that the municipality had a policy or custom that "caused the violation of [his] rights." *Griffith v. Franklin Cnty.*, 975 F.3d 554, 581 (6th Cir. 2020) (citing *Monell*, 436 U.S. at 694). To show such a policy or custom, "[t]he plaintiff can look to (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (citations omitted).

Easley alleges that Warren County failed to adequately train or supervise Harmon and his deputies. (Compl. ¶ 26). To prevail on these claims, "the plaintiff must prove the following: (1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Ellis ex rel. Pendergrass v. Cleveland Mun. School Dist.*, 455 F.3d 690, 700 (6th Cir. 2006) (citing *Russo v. City of Cincinnati*, 953 F.2d 1036, 1046 (6th Cir. 1992)). While the plaintiff is certainly not required to "prove" each element of their claim upon a motion to dismiss, he must plausibly plead each element in accordance with the standards set out by *Twombly*, *Iqbal*, and Fed. R. Civ. P. 8(a). *See, e.g.*, *Milby v. Underwood*, 713 F. Supp. 3d 383, 391-92 (W.D. Ky. 2024); *Napper v. Hankison*, 617 F. Supp. 3d 703, 737 (W.D. Ky. 2022); *Meyers v. Cincinnati Bd. of Educ.*, 343 F. Supp. 3d 714, 728 (S.D. Ohio 2018). This includes properly pleading the second element of the *Ellis* framework, deliberate indifference. *Napper*, 617 F. Supp. 3d at 737. Deliberate indifference is plausibly plead if the plaintiff alleges either "(1) 'prior

4

instances of unconstitutional conduct demonstrating that the [municipality] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury'; or (2) '[A] single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation[.]'" *Milby*, 713 F. Supp. 3d at 392 (alterations in original) (citing *Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005); *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 409 (1997)). "Where . . . the constitutional violation was not alleged to be part of a pattern of past misconduct, a supervisory official or a municipality may be held liable only where there is essentially a complete failure to train the police force, or training that is so reckless or grossly negligent that future police misconduct is almost inevitable . . . ." *Hays v. Jefferson Cnty*, 668 F.2d 869, 874 (6th Cir. 1982); *see also Harvey v. Campbell Cnty.*, 453 F. App'x 557, 567 (6th Cir. 2011); *Okolo v. Metro. Gov't of Nashville*, 892 F. Supp. 2d 931 (M.D. Tenn. 2012).

"A plaintiff must plausibly allege 'deliberate indifference to *constitutional* rights,' not just any harm." *Napper*, 617 F. Supp. 3d at 737 (quoting *Arrington-Bey v. City of Bedford Heights*, 858 F.3d 988, 994 (6th Cir. 2017)). This constitutional right must be "clearly established," as one cannot be deliberately indifferent to a right that is not clearly established. *Arrington-Bey*, 858 F.3d at 994.

In this instance, Easley makes several allegations about the supervision and training of the WCRJ staff. He states that the WCRJ has "written internal policies, including, but not limited to, [a] code of ethics, training, duty to intervene, use of force, and provision of medical services." (Compl. ¶ 26). Further, he alleges that Harmon and his deputies "failed to implement these policies and were not adequately trained and/or supervised." (Compl. ¶ 26). Finally, Easley states that

Weatherby was negligently retained, as he had previously used excessive force against an inmate and Harmon failed to take corrective action. (Compl. ¶ 26). These facts, together, make out a claim of deliberate indifference. While not conclusive, Defendants' alleged retention of Weatherby after his prior excessive force incident could amount to a reckless or grossly negligent violation of a single constitutional right—the Fourth Amendment's protection against unreasonable seizure of the person—which would plausibly make future violations reasonably foreseeable. Thus, he has adequately pleaded deliberate indifference.

The other two elements of an inadequate training and supervision claim are also sufficiently pleaded here. First, accepting Easley's pleadings as true, the WCRJ's training was clearly inadequate for the duties performed, as an adequately trained and supervised deputy jailer would not kick an inmate in the head with such force that the inmate was blinded. Second, the inadequate training was closely related to or actually caused the injury because had Easley not been kicked in the face, he would not have been blinded. Easley asserts that he went into the jail with no damage to his face or left eye. (Compl. ¶ 14). Following the kick, Easley alleges he suffered an eye infection, required eye surgery, and was left permanently blind in his left eye. (Compl. ¶¶ 24-25).

Additionally, Easley sufficiently pleads the violation of a clearly established constitutional right. For the purposes of Section 1983, a right is clearly established if the "contours" of the right are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Dickerson v. McClellan*, 101 F.3d 1151, 1158 (6th Cir. 1996) (quoting *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992)). In determining whether a right is clearly established, the Sixth Circuit requires that the right be "defined in light of the specific context of [a] case, not as a broad general proposition." *Hall v. Sweet*, 666 F. App'x 469, 478 (6th Cir. 2016) (quoting *Johnson v. Moseley*, 790 F.3d 649, 654 (6th Cir. 2015)). It is well established in the Sixth

Circuit that "[u]nder the Fourteenth, Fourth, or Eighth Amendments, assaults on subdued, restrained and nonresisting detainees, arrestees, or convicted prisoners are impermissible." *Coley v. Lucas Cnty.*, 799 F.3d 530, 540 (6th Cir. 2015) (citations omitted); *see also Phelps v. Coy*, 286 F.3d 295, 301-02 (6th Cir. 2002) (collecting cases). Assuming, as the Court must in ruling on a 12(b)(6) motion that Easley's allegations are true, he has pleaded enough to show a violation of his Fourth and Fourteenth Amendment rights. Easley claims he was subdued throughout the entire altercation that forms the basis of the Complaint, making Weatherby's violent actions totally unnecessary. Therefore, he has successfully pleaded Warren County's deliberate indifference to the violation of a constitutional right.

Defendants also contend that Easley's Section 1983 claim against Warren County should be dismissed because the County has no authority to prescribe how the jail supervises or trains its employees. (Defs.' Mot. Dismiss 5). Defendants cite KRS 441.055(1)(a)(1)(d), providing that Kentucky's jails must "[a]dopt the recommendations of the Jail Standards Commission," including a "[c]urriculum of basic and continuing annual training," and KRS 441.155(1), which requires the Kentucky Department of Corrections to "maintain a jail staff training program." Defendants omit reference to KRS 71.060(2), which states, in part, that "[t]he *fiscal court* shall establish education and training requirements" for jail employees "as permitted by regulations adopted pursuant to KRS 441.055." KRS 71.060(2) (emphasis added). Accordingly, county governments in Kentucky have at least some oversight of the training and supervision of jail employees. This Court has previously permitted jail-related *Monell* claims to proceed against county governments. *E.g.*, *Crouch v. Warren Cnty. Reg'l Jail*, No. 1:21-CV-P25-GNS, 2021 WL 1225963 (W.D. Ky. Mar. 31, 2021) (finding that the county is the proper defendant for claim asserted against a jail); *Pedigo v. Fulton Cnty. Jail*, No. 5:17-CV-P199-GNS, 2018 WL 1598932 (W.D. Ky. Apr. 2, 2018).

Accordingly, Easley has pleaded a plausible claim against Warren County under Section 1983, and Defendants' motion is denied as to this claim.

### 2. *State Law Claims*

Defendants also seek dismissal of the state law claims against Warren County on the basis that Warren County is protected by sovereign immunity. (Defs.' Mot. Dismiss 10). Unlike with determinations of qualified immunity for individual plaintiffs, which inherently involve factual questions, the Sixth Circuit has generally allowed consideration of sovereign immunity at the motion to dismiss stage. *See, e.g.*, *Kerchen v. Univ. of Mich.*, 100 F.4th 751, 761-62 (6th Cir. 2024).

"It is undisputed that '[s]overeign immunity affords the state absolute immunity from suit[.]'" *Three Forks Reg'l Jail v. Vanover*, No. 2018-CA-001897-MR, 2020 WL 5266142 (Ky. App. Sept. 4, 2020) (alterations in original) (quoting *Transit Auth. of River City v. Bibelhauser*, 432 S.W.3d 171, 173 (Ky. App. 2013)). Counties, as political subdivisions of the state, are entitled to sovereign immunity. *Lexington-Fayette Urb. Cnty. Gov't v. Smolcic*, 142 S.W.3d 128, 132 (Ky. 2004). Accordingly, Warren County is immune from Easley's state law tort claims which are therefore dismissed.

### B. Claims Against Individual Defendants - Official Capacity

Plaintiff brings suit against each individual defendant and Unknown Defendant in his or her official capacity. (Compl. 1). In seeking dismissal, Defendants argue that Warren County is a party to this action, and any claim asserted against each individual defendant or Unknown Defendant in his or her official capacity is duplicative and therefore should be dismissed. (Defs.' Mot. Dismiss 10).

"Official capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (quoting *Monell*, 436 U.S. at 690 n.55). These claims are not asserted against a person in his or her individual capacity, and as long as the entity is given "notice and an opportunity to respond," official capacity claims are to be treated as being asserted against the entity itself. *Id.* at 166. In these circumstances, a plaintiff cannot recover from any individual for an official capacity claim and instead must look to the entity. *Id.* This Court generally dismisses official capacity claims where the entity itself is also a named defendant. *Baar v. Jefferson Cnty. Bd. of Educ.*, 686 F. Supp. 2d 699, 704 (W.D. Ky. 2010) (citing *Meredith v. Jefferson Cnty. Bd. of Educ.*, No. 3:22-CV-620-H, 2007 WL 3342258, at *2 (W.D. Ky. Nov. 9, 2007)). Therefore, the claims against the individual defendants and Unknown Defendants in their official capacities are dismissed.[1]

C. **Claims Against Individual Defendants – Individual Capacity**

Defendants also assert that qualified immunity bars Easley's Section 1983 claims against them in their individual capacities. (Defs.' Mot. Dismiss 12).

Under federal law, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citing *Procunier v. Navarette*, 434 U.S. 555, 565 (1978); *Wood v. Strickland*, 420 U.S. 308, 322 (1975)). "Qualified immunity is a defense only to

---

[1] In his response, Easley cites two cases in opposition to the dismissal of the official capacity claims: *Thornton v. City of Columbus*, 733 F. App'x 807, 815 (6th Cir. 2018), and *Brown v. Shelby County*, No. 2:19-CV-02336, 2020 WL 5095587 (W.D. Ky. Aug. 28, 2020). (Pl.'s Resp. Defs.' Mot. Dismiss 9-10, DN 15). Neither citation, however, appears to be valid, and these decisions do not appear in either the CM/ECF system or Westlaw.

individual capacity claims." *Meogrossi v. Aubrey*, No. 3:09CV-00301-JDM, 2011 WL 1235063, at *6 (W.D. Ky. Mar. 31, 2011).

To determine whether a defendant is entitled to qualified immunity, a court must consider: (i) whether "based on applicable law and the facts viewed in the light most favorable to the plaintiff, has a constitutional violation occurred"; and if so, (ii) whether "the constitutional right [was] 'clearly established' at the time of violation." *Penman v. Correct Care Sols.*, No. 5:18-CV-58-TBR, 2018 WL 6220921, at *8 (W.D. Ky. Nov. 28, 2018) (citing *Bell v. Johnson*, 308 F.3d 594, 601 (6th Cir. 2002); *Saucier v. Katz*, 533 U.S. 194 (2001)). Both inquiries must be resolved in the plaintiff's favor. *See Hoskins v. Knox Cnty.*, No. 17-84-DLB-HAI, 2018 WL 1352163, at *19 (E.D. Ky. Mar. 15, 2018). "The Plaintiff bears 'the burden of showing that' the Defendants are 'not entitled to qualified immunity.'" *Id.* (citation omitted).

As the Sixth Circuit has recognized, however, it is inappropriate for a court to resolve the applicability of qualified immunity in ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *See Wesley v. Campbell*, 779 F.3d 421, 433-34 (6th Cir. 2015) ("[I]t is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity. Although an officer's entitle[ment] to qualified immunity is a threshold question to be resolved at the earliest possible point, that point is usually summary judgment and not dismissal under Rule 12." (alteration in original) (internal quotation marks omitted) (internal citation omitted) (citation omitted)). At this stage, it would be inappropriate to determine whether any claims are precluded by qualified immunity before discovery is conducted, so Defendants' motion is denied on this basis.

1.   *Intentional Infliction of Emotional Distress*

In addition to Defendants' arguments about qualified immunity they also assert that, regardless of whether they are granted qualified immunity, Easley's intentional infliction of emotional distress ("IIED") claim should be dismissed because it is duplicative. (Defs.' Mot. Dismiss 20).

Defendants argue that under Kentucky law the tort of IIED is a "gap-filler" that is only available when other torts are not. (Defs.' Mot. Dismiss 20). It is true that Kentucky's courts have characterized IIED as a "gap-filler," but not in the manner that Defendants state. *See Childers v. Geile*, 367 S.W.3d 576, 581 (Ky. 2012) (acknowledging that IIED has been characterized as a "gap-filler tort" by Kentucky courts). In fact, the Kentucky Supreme Court has explicitly stated that IIED "clearly can stand alone on appropriate facts." *Id.* This tort is a "gap-filler" in that if a plaintiff succeeds on both a traditional negligence claim and an IIED claim, he or she cannot recover for both, because emotional damages are included in a plaintiff's damages for negligence. *Id.* "Emotional distress as stand-alone damages can only be compensated through the tort of intentional infliction of emotional distress. In all other instances, emotional distress (mental pain and suffering) follows a personal injury, and is only compensable as a by-product of that injury." *Id.* Accordingly, an IIED claim can be plead in the alternative to a traditional negligence claim, but if the plaintiff recovers under a negligence theory, then he or she will not recover independently for IIED. *Id.* ("This is not to say that [IIED] cannot be pleaded alternatively, but there can be only one recovery on a given set of facts.").

Recovery for IIED, however, is only permitted under Kentucky law if the conduct was "solely intended to cause emotional distress." *Green v. Floyd Cnty.*, 803 F. Supp. 2d 652, 655 (E.D. Ky. 2011) (citing *Brewer v. Hilliard*, 15 S.W.3d 1, 7-8 (Ky. App. 1999); *Abney v. Gulley*

11

*Remodeling & Maint., Inc.*, No. 2009-CA-1490, 2010 WL 2867933, at \*4-5 (Ky. App. July 23, 2010)). For an IIED claim to survive the pleading stage, the plaintiff must plausibly allege that the infliction of emotional distress was the "crux" or "sole intent" of the torts alleged. *Estep v. Combs*, 366 F. Supp. 3d 863, 887 (E.D. Ky. 2018).

In this instance, Easley's infliction of emotional distress claim does not form the heart of the torts alleged, but rather the physical injuries that resulted from Weatherby kicking, tasing, and making other physical contact with Easley. (Compl. ¶¶ 19-22). Easley specifically alleges that "[a]s a direct *result* of the injury, [he] . . . has suffered, and continues to suffer, from emotional distress." (Compl. ¶ 25 (emphasis added)). It appears that even Easley concedes that his alleged emotional distress was not the aim of Defendants and is instead only a portion of the damages arising from other torts. Accordingly, his IIED claims are dismissed.

### 2.     *Failure to Provide Care*

Defendants also move to dismiss Easley's failure to acquire/provide necessary medical care claim because he failed to exhaust administrative remedies. (Defs.' Mot. Dismiss, 19). Defendants argue that, under KRS 454.415(1), Easley was required to exhaust all available administrative remedies before bringing his failure to provide care claim. *Id.* In relevant part, the statute provides:

> No action shall be brought by or on behalf of an inmate, with respect to:
> (a)     An inmate disciplinary proceeding;
> (b)     Challenges to a sentence calculation;
> (c)     Challenges to custody credit; or
> (d)     A conditions-of-confinement issue;
> until administrative remedies as set forth in the policies and procedures of the Department of Corrections, county jail, or other local or regional correctional facility are exhausted.

KRS 454.414(1). Easley argues, however, that this provision is not applicable to him because he is not currently an "inmate" as the term is defined in the statute. (Pl.'s Resp. Defs.' Mot. Dismiss 16).

The statutory language of the federal Prison Litigation Reform Act ("PLRA") is "analogous" to KRS 454.414 and therefore the state statute is interpreted consistently with the PLRA. *Burke v. Thompson*, No. 5:15-cv-7-TBR, 2016 WL 2587996 (W.D. Ky. May 4, 2016) ("Therefore, the Court will interpret the language of KRS § 454.415 to determine whether it applies to claims brought by or on behalf of inmates who are no longer incarcerated. In doing so, the Court finds the statutory language of the PLRA to be analogous and case law interpreting the PLRA to be persuasive."). "While the Sixth Circuit has not specifically decided this issue, every federal court of appeals that has addressed this issue has held that the PLRA's exhaustion requirement does not apply to suits brought by former inmates." *Id.* (quoting *Mabry v. Freeman*, 489 F. Supp. 2d 782, 785 (E.D. Mich. 2007)). Accordingly, KRS 454.415's exhaustion provision, like that of the PLRA, does not apply to former inmates bringing suit after release from custody. *Means v. Bearden*, No. 3:21-CV-711-RGJ, 2022 WL 4290094, at *4 (W.D. Ky. Sept. 16, 2022).

Easley was not incarcerated when he commenced this action against Defendants, so the exhaustion requirement does not apply to him. (Compl. ¶ 24). Additionally, Defendants' assertion that this claim cannot survive because Easley does not plead that he requested medical care is not well taken. It is obvious that a person who endured the amount of physical trauma that Easley claims would need some amount of medical attention. That Easley did not explicitly request such attention does not defeat his claims at this stage of litigation. Therefore, Defendants' motion to dismiss is denied as to this claim.

**D.      Claims Against Unknown Defendants**

Defendants also seek to dismiss all claims against the Unknown Defendants referenced in the Complaint. Defendants argue that bringing claims against unknown defendants is not permitted in federal court and any claims asserted against Unknown Defendants are subject to dismissal on statute of limitations grounds. (Defs.' Mot. Dismiss 21).

The Kentucky statute of limitations for personal injury actions is applicable to claims brought under Section 1983 is one year. KRS 413.140(1)(a) (imposing a one-year statute of limitations for personal injury claims); *Brown v. Wiggington*, 981 F.2d 913, 914 (6th Cir. 1992) ("There is also no dispute that in Kentucky there is a one-year statute of limitations on [S]ection 1983 actions."); *Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996) (stating that the statute of limitations for a Section 1983 claim is one year). "The period 'begins to run when the plaintiff knows or has reason to know that the act providing the basis of his or her injury has occurred.'" *Jones v. McLerran*, No. 2:20-CV-00009, 2021 WL 1165948, at *5 (M.D. Tenn. Mar. 26, 2021) (quoting *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996)); *see also* KRS 413.140(2) ("[T]he cause of action shall be deemed to accrue at the time the injury is first discovered or in the exercise of reasonable care should have been discovered . . . .").

No Fed. R. Civ. P. 16 scheduling order has been entered in this case, so there is no set deadline to amend pleadings. At this stage, it is premature to determine whether claims against any Unknown Defendant would relate back and avoid the statute of limitations. Therefore, Defendants' motion is denied on this basis.

**V.      CONCLUSION**

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss (DN 12) is **GRANTED IN PART** and **DENIED IN PART**, and Plaintiff's claims other

14

than those identified as remaining are **DISMISSED WITHOUT PREJUDICE**. Easley's remaining claims in this matter are: (i) his Section 1983 claims against Warren County; (ii) his Section 1983 claims against the named individual defendants in their individual capacities; (iii) his tort claims, except IIED, against the named individual defendants in their individual capacities; and (iv) any claim asserted against Unknown Defendants in their individual capacities.

Greg N. Stivers, Chief Judge
United States District Court

September 30, 2025

cc:  counsel of record